MILLER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-441-CR

FREDERICK JEROME MILLER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

Appellant Frederick Jerome Miller appeals his conviction and life sentence for capital murder.  In three points, he argues that the evidence is legally and factually insufficient and that the trial court erred by overruling his motion to suppress a statement he made to police.  We affirm.

Discussion

In his first and second points, Appellant argues that the evidence is legally and factually insufficient to support his conviction.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact-finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.    In performing a factual sufficiency review, we are to give deference to the fact-finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact-finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

The victim in this case was Napoleon Lewis Jr.  Tarrant County Deputy Medical Examiner Dr. Gary Sisler testified that Lewis was strangled to death with a necktie. 
 Fort Worth Police Officer Scott Cepak testified that he discovered the body in Lewis’s home while performing a “welfare check” in response to a call from a concerned neighbor who had not seen Lewis in a couple of days and had seen someone else driving Lewis’s car.  Fort Worth Police Crime Scene Officer Pat Henz testified that Lewis’s body was fully dressed except for his shoes, which were next to the body.  The house appeared to have been ransacked. 

The next day, Fort Worth Police Officer Kelly Caruthers stopped Lewis’s missing car after hearing a police broadcast concerning the car and Lewis’s homicide.  Officer Caruthers arrested the car’s passenger, Willie Wilson, on a parole violation warrant. 

Wilson testified that he had known Appellant for several years.  Wilson said that, while he and Appellant were together using drugs one night, Appellant told him that he thought he had “did somebody in.”  Appellant allowed Wilson and others to pay him money to use Lewis’s car over the next several days.  Wilson was riding in the car with an unnamed person when police stopped the car and arrested him.  Wilson next saw Appellant when they were both in jail.  Wilson testified that Appellant told him that he had stolen property from Lewis’s house and pawned it. 

Fort Worth Police Detective Michel Carroll testified that Wilson, after he was arrested while riding in Lewis’s car, told Detective Carroll that he had obtained the car from Appellant.  Detective Carroll eventually interviewed Appellant multiple times.  In his first interview, Appellant denied having known Lewis and claimed that Wilson committed the crime.  In his second interview, he admitted that he knew Lewis and had a physical relationship with him and that he had taken property from Lewis’s house.  In a third interview,
(footnote: 2) Appellant told Detective Carroll that he had gone to Lewis’s house with another man (not Wilson) and Lewis let them both in.  Appellant told Detective Carroll that he went into another room while Lewis and the other man, whom Appellant did not know, stayed in the bedroom.  Appellant said that he found Lewis lying on the floor and the other man gone.  At that point, Appellant told Detective Carroll, he started removing property from Lewis’s house and carried it off in Lewis’s car.  

Demarcus Johnson testified that he met Appellant for the first time when they were both confined in the Tarrant County Jail.  Johnson said that Appellant consulted with him about DNA evidence from the crime scene. Johnson testified that Appellant admitted to him that he had killed the victim by strangling him with his tie.  According to Johnson, Appellant told him that he had taken various property from Lewis’s house, including $800 from Lewis’s shoe, had taken Lewis’s car, and had returned to the house to remove more property.  

Detective Carroll testified that there were no signs of forced entry into Lewis’s house, from which Detective Carroll concluded that the crime was committed by someone who knew Lewis.  Likewise, Dr. Sisler testified that Lewis had no defensive wounds on his hands.  
Detective Carroll’s investigation revealed no evidence that anyone other than Appellant was in the house when Lewis was murdered. 

Gloria McDonald testified that she and Lewis were coworkers and good friends.  About two weeks before his death, Lewis was uncharacteristically upset and told McDonald that he intended to break off a relationship with an unnamed person because he was tired of having to buy crack cocaine for that person every night.  He told McDonald that he knew that the person would be upset with him. 

Appellant called one witness, Shirley Battles.  Battles testified that she saw an unknown man, whose description did not match Appellant, standing on Lewis’s front porch around the date of Lewis’s death.  Appellant argues that Battles’s description points to Demarcus Johnson as the likely killer, but nothing in the record ties Johnson to the relevant events except for his jailhouse conversations with Appellant.

Considering all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Appellant killed Lewis in the course of a robbery as charged in the indictment.  The evidence is therefore legally sufficient to support the verdict.  
See 
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  Considering the evidence in a neutral light, we hold that it is also factually sufficient.  
See Zuniga
, 144 S.W.3d at 481.  We therefore overrule Appellant’s first two points.

In his third point, Appellant argues that the trial court erred by denying his motion to suppress his third statement to Detective Carroll because the statement was taken in violation of article 38.22 of the code of criminal procedure.  Specifically, Appellant contends that Detective Carroll did not give Appellant the article 38.22 warnings in a manner that Appellant could understand,
 that Appellant would not have given the statement if he had known he could terminate the interview, and that Appellant did not freely make the statement because his will was overborne.  We note that while Appellant cites authority in support of his argument, his application of that authority to the facts of this case is vague, conclusory, and wholly without explanation.

The trial court conducted a 
Jackson v. Denno
(footnote: 3) 
hearing to determine the admissibility of the tape recording of Appellant’s third statement to Detective Carroll.  
At a 
Jackson v. Denno 
hearing, the trial court is the sole fact-finder and may choose to believe or disbelieve any or all of the witnesses’ testimony.  
Jackson
, 378 U.S. at 276-77, 84 S. Ct. at 1780-81; 
Dewberry v. State
, 4 S.W.3d 735, 747 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We will not disturb the trial court’s findings absent an abuse of discretion.  
Alvarado v. State
, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).  An abuse of discretion will be found only when the trial judge’s decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.  
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).

The statement of an accused may be used in evidence if it was freely and voluntarily made without compulsion or persuasion.  
Tex. Code Crim. Proc. Ann.
 art. 38.21 (Vernon 2005).  A confession is involuntary if circumstances show that the defendant’s will was “overborne” by police coercion.  
Creager v. State
, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  In other words, a statement is involuntary if the record reflects “official, coercive conduct of such a nature” that any statement obtained thereby is “unlikely to have been the product of an essentially free and unconstrained choice by its maker.”  
Alvarado
, 912 S.W.2d at 211.  The determination of whether a confession is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition.  
Reed v. State
, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref’d).

Article 38.22, section 2(b) of the Texas Code of Criminal Procedure provides that no statement given by an accused as a result of custodial interrogation is admissible unless the accused “prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived” the warning prescribed by subsection 2(a).  
Tex. Code Crim. Proc. Ann.
 art. 38.22, § 2(b) (Vernon 2005)
.

Detective Carroll testified that he gave Appellant the 
Miranda
 and article 38.22 warnings before he made his third statement.  State’s exhibit 27 is a typewritten copy of the both the 
Miranda
 and article 38.22 warnings.  It bears Appellant’s initials in twelve places and his signature in two places, along with the dates of his first and third statements to Detective Carroll.  At the beginning of Appellant’s third statement, Detective Carroll went over warnings one by one, and Appellant stated that he understood each warning.  Detective Carroll asked, “Any statement you make may be used as evidence against you in court, do you understand that one?”; Appellant answered, “Yes, sir.”  He also stated that he had initialed the written warnings.
  Detective Carroll testified that he did not coerce, threaten, or harm Appellant or promise him anything in return for his statements.  The trial court made findings of fact and conclusions of law on the record that Appellant received the article 38.22 warnings and that he gave his statement freely and voluntarily. 

Nothing in the record supports Appellant’s arguments that the warnings were given in a manner that he could not understand, that he did not know he could terminate the interview, that he would not have given the statement had he known that he could terminate the interview, and that his free will was somehow overborne.  We therefore hold that the trial court did not abuse its discretion by denying Appellant’s motion to suppress his third statement, and we overrule Appellant’s third point.

Conclusion

Having overruled all of Appellant’s points, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL F: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 4, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The third interview, a tape recording of which was played for the jury, forms the basis of Appellant’s third point on appeal.

3:
378 U.S. 368, 84 S. Ct. 1774 (1964).